IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

JUSTIN COLON                                                                                                    PLAINTIFF

                v.                                    Civil No. 09-5200

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration                                                                          DEFENDANT

## MEMORANDUM OPINION

**I.**      **Procedural Background**

Plaintiff, Justin Colon, brings this action seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his application for supplemental security income ("SSI") childhood benefits under Title XVI of the Social Security Act (the "Act").

On June 7, 2005, an application for SSI was protectively filed on Plaintiff's behalf. (Tr. 11,14, 48-51). At the time of filing, Plaintiff was fifteen years old, an adolescent under the Act.[1] (Tr. 14); 20 C.F.R. § 416.926a(g)(2). He alleges disability due to the following impairments: short attention span, poor short-term memory, narcolepsy, depression, headaches/migraines, learning difficulties, and anger outbursts. (Tr. 95-96, 101).

Plaintiff's application was denied at both the initial and reconsideration levels. (Tr. 36-37, 39-41). An administrative hearing was held on February 26, 2007. (Tr. 548-89). Plaintiff was present at the hearing and represented by counsel. *Id.* In a written decision dated June 1, 2007, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled within the meaning of the

---

[1] Plaintiff has since reached the age of majority.

Act. (Tr. 8-22). On June 20, 2008, the Appeals Council declined Plaintiff's request for review, thus making the ALJ's decision the final decision of the Commissioner. (Tr. 3-5). Plaintiff now seeks judicial review of that decision.

## II.     Factual Background

### A. Medical Records

Plaintiff submitted extensive medical records concerning his alleged impairments. In 2000, he was diagnosed with attention deficit/hyperactivity disorder ("ADHD") with symptoms of short attention span, poor concentration, and distractability. (Tr. 268). He was treated with Adderall for several years, but discontinued his medication due to increased anger and irritability. (Tr. 407). In 2003, Plaintiff fractured his wrist and was knocked unconscious in a skateboarding accident. (Tr. 287). On examination, Plaintiff was alert and oriented with no evidence of head trauma. (Tr. 290-91). A CT of Plaintiff's head was negative. (Tr. 288). In 2004, Plaintiff complained of "zoning out" and headaches. (Tr. 252). An EEG and CT of Plaintiff's brain were performed, both yielding normal results. (Tr. 251-52).

After experiencing excessive daytime somnolence and restless legs, Plaintiff was sent for a sleep study with Shari DeSilva, M.D. (Tr. 241, 282). An overnight polysomnogram and multiple sleep latency test ("MSLT") were consistent with narcolepsy. (Tr. 428). Dr. DeSilva sent a letter to Plaintiff's school with instructions that Plaintiff should be allowed two timed naps per day (fifteen to twenty minutes each) and a nap before all tests. (Tr. 425). Plaintiff was prescribed Provigil, Gabapentin, and Anafanil for narcolepsy. (Tr. 425-26). On July 8, 2005, Plaintiff reported feeling better, having fewer headaches and anger outbursts, and performing better in school. (Tr. 422). However, on September 16, 2005, Plaintiff reported increased sleepiness and an average of four

headaches per week. (Tr. 420-21). Dr. DeSilva prescribed Topamax for headaches and increased Plaintiff's dosage of Provigil. *Id.* As of August 23, 2006, Plaintiff was still experiencing severe headaches three times per week. (Tr. 472-73). His dosage of Topamax was increased and he was given samples of Maxalt. (Tr. 473).

Due to increasing behavioral problems and depression, Plaintiff was referred to Ozark Guidance Center for counseling. (Tr. 245-46). On January 19, 2005, Cynthia Patton, Ph.D., assessed Plaintiff with ADHD, combined type, depressive disorder NOS, and a reading disorder. (Tr. 409). She gave Plaintiff an estimated Global Assessment of Functioning ("GAF") of 50. *Id.* Dr. Patton's progress notes reveal some improvement in Plaintiff's ability to control his anger outbursts, but continued challenges with memory, organization, distractability and irritability. (Tr. 401-03). After being placed on medication for narcolepsy, Plaintiff reported "feeling better" and his behavior seemed to be stabilizing. (Tr. 393-97). At this time, Jarrod Adkisson, M.D., ruled out intermittent explosive disorder, but gave additional diagnoses of obsessive-compulsive disorder ("OCD") and learning disorder NOS and estimated Plaintiff's GAF at 45. *Id.* As of June 17, 2005, Plaintiff's grandmother reported "significant stabilization" and discontinued therapy. (Tr. 452). Dr. Patton rated Plaintiff's GAF at 55, but opined that his prognosis was uncertain. *Id.*

In a Childhood Disability Evaluation Form dated August 23, 2005, S.A. Whaley, M.D., found that Plaintiff had severe impairments that did not meet, medically equal or functionally equal the listings. (Tr. 413-18). Dr. Whaley found less than marked impairment in the domains of acquiring and using information, attending and completing tasks, and interacting and relating with others. *Id.* He found no limitations in the domains of moving about and manipulating objects, caring for yourself, and health and physical well-being. *Id.* In a second Childhood Disability Evaluation Form

dated November 7, 2005, S. Manley, M.D., found less than marked limitations in acquiring and using information and attending and completing tasks. (Tr. 444-49). He found no limitations in the remaining four domains. *Id.*

On November 2, 2005, Plaintiff presented to Janelle L. Potts, M.D., with significant anxiety and depression, for which he was given Lexapro. (Tr. 455-56). On November 30, 2005, Dr. Potts noted that Plaintiff was "doing much better as far as anger management." (Tr. 454). On December 7, 2005, Dr. Potts wrote a note stating that Plaintiff could not adhere to school attendance policies due to multiple medical problems. (Tr. 146).

Plaintiff underwent additional counseling at Wellspring Healthcare Associates for anger/aggression issues from May 24, 2006, through July 19, 2006. (Tr. 468-70). Initially, Plaintiff demonstrated poor judgment and insight and blaming/avoiding tendencies. *Id.* However, Plaintiff demonstrated some progress on his overall goals. *Id.*

On June 2, 2006, Plaintiff saw Stephen C. Dollins, M.D., for increasing aggression and violence. (Tr. 464-65). Specifically, Plaintiff had recently destroyed property and pushed his aunt and grandfather. *Id.* Dr. Dollins switched Plaintiff from Lexapro to Effexor. *Id.* As of July 13, 2006, Plaintiff reported fewer outbursts and an improved mood. (Tr. 463).

B. School Records

Plaintiff has a history of special education services beginning in fifth grade. (Tr. 169). In December 2000, Plaintiff scored within the average range on the Wechsler Intelligence Scale for Children-III, receiving a verbal IQ of 93, a performance IQ of 107, and a full-scale IQ of 99. (Tr. 172). On the Wechsler Individual Achievement Test, Plaintiff received average scores on reading comprehension, numerical operations, and math reasoning, and scored in the upper limits of the low-

average range in spelling, reading and written expression. (Tr. 213). After administering several tests, the school psychology specialist determined that Plaintiff functioned within the average range for his age. (Tr. 215). However, Plaintiff was recommended for special education services because he was functioning on a level significantly below grade placement due to difficulties with attention, concentration and organization stemming from his diagnosis of ADHD. *Id.* Over the next several years, Plaintiff received special education services until eleventh grade, when Plaintiff was placed in full-time special education. (Tr. 192, 567).

During the 2001-2002 school year (sixth grade), Plaintiff received Bs in reading, math, and English, As in science and social studies, and passes (graded on a pass/fail basis) in orchestra, physical education, art, and computer literacy. (Tr. 177). In seventh grade, Plaintiff received Bs in science, reading, and English, Cs in geography and math, and As in health and orchestra. (Tr. 176). In eighth grade, Plaintiff scored in the basic range in mathematics and literacy on the Arkansas Comprehensive Testing, Assessment and Accountability Program ("ACTAAP"). (Tr. 175). According to his Annual Review Form, Plaintiff mastered one of two goals and five of six objectives in adaptive behavior and written expression and was passing all courses except for math and orchestra. (Tr. 163). In ninth grade, Plaintiff scored within the 81st percentile in reading comprehension, the 30th percentile in concepts and problem solving, and the 30th percentile in mathematics on the ACTAAP. (Tr. 148). In the third term of his tenth grade year, Plaintiff received a D in math, an A in English, a C in social studies, and Fs in geology and Funds of Design. (Tr. 127). He also had several absences from school. (Tr. 142). In his eleventh grade year, Plaintiff was enrolled in all special education classes. (Tr. 203). According to teacher report, Plaintiff was functioning on a fifth to sixth grade reading level, a third to fourth grade writing level, and a sixth

to seventh grade math level. *Id.*

### III. Applicable Law:

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2003). "Substantial evidence is less than a preponderance, but enough so that a reasonable mind might accept it as adequate to support a conclusion." *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001)). In determining whether evidence is substantial, the court considers both evidence that detracts from the Commissioner's decision as well as evidence that supports it. *Craig v. Apfel*, 212 F.3d 433, 435-36 (8th Cir. 2000) (citing *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000)). If, after conducting this review, "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Secretary's] findings," then the decision must be affirmed. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (quoting *Siemers v. Shalala*, 47 F.3d 299, 301 (8th Cir. 1995)).

To be disabled under the Act, a child must prove that he "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations," and which has lasted or can be expected to last for at least twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. § 416.906. In determining whether a claimant under the age of eighteen is disabled, the ALJ undertakes a sequential three-step evaluation. *Moore ex rel. Moore v. Barnhart*, 413 F.3d 718 (8th Cir. 2005); 20 C.F.R. § 416.924(a). The ALJ first determines whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is so engaged, he will not be awarded SSI benefits. *Id.* At the second step, the ALJ determines whether the child has an impairment or combination of impairments that is "severe." 20 C.F.R. § 416.924(c). To be deemed

severe, an impairment must be more than "a slight abnormality . . . that causes no more than minimal functional limitations."  *Id.*  At the final step, the ALJ determines whether the child has an impairment or impairments that meet, medically equal, or functionally equal a listed impairment. 20 C.F.R. § 416.924(d).

**IV.    Discussion:**

Plaintiff contends that the Commissioner's decision is not supported by substantial evidence. Specifically, Plaintiff raises the following issues: (1) whether the ALJ erred in determining that his impairments did not meet a listing; and (2) whether the ALJ erred in determining that his impairments did not "functionally" equal a listing.  *See* Pl.'s Br. 3-13.  For reasons more thoroughly discussed below, we find that substantial evidence does not support the ALJ's step three determination.

The claimant has the burden of showing that his impairment meets or equals a listing. *Jackson v. Astrue*, 314 Fed. Appx. 894, 895 (8th Cir. 2008) (citing *Johnson v. Barnhart*, 390 F.3d 1067, 1070 (8th Cir. 2004)).  To meet a listing, an impairment must meet all the specified criteria. *Id.*  A child's impairment medically equals a listed impairment if it "is at least equal in severity and duration to the medical criteria of the listed impairment."  20 C.F.R. § 416.926(a); *Neal ex rel. Walker v. Barnhart*, 405 F.3d 685, 689 (8th Cir. 2005).

Even if a child's impairments do not meet a listing, he will be awarded benefits if his impairments "functionally" equal a listed impairment.  20 C.F.R. § 416.926a(a).  To determine whether an impairment functionally equals a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains.  20 C.F.R. § 416.926a(b)(1).  The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting

and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1); *see also Moore ex rel. Moore v. Barnhart*, 413 F.3d 718, 722 n. 4 (8th Cir. 2005). To functionally equal a listing, an impairment must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a).

A marked limitation is an impairment that seriously interferes with the child's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2)(i). It is "more than moderate" but "less than extreme." *Id.* An extreme limitation is defined as "more than marked" and exists when a child's impairment(s) interferes very seriously with his ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3)(i). Day-to-day functioning may be very seriously limited when an impairment limits only one activity or when the interactive and cumulative effects of the impairment limit several activities. *Id.*

In determining the degree of limitation in each of the six domains, the ALJ is required to analyze the child's subjective complaints in accordance with the seven factors from 20 C.F.R. § 416.929(c). Specifically, the ALJ must consider these factors: (1) the child's daily activities; (2) the location, duration, frequency, and intensity of the child's pain or other symptoms; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of the child's medication; (5) treatment, other than medication, that the child receives or has received for relief of pain or other symptoms; (6) any measures the child uses or has used to relieve his or her pain or other symptoms; and (7) other factors concerning the child's functional limitations or restrictions due to pain or other symptoms. *See* 20 C.F.R. § 416.929(c)(3); *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984. The ALJ is not required to methodically discuss each factor as long as the ALJ

acknowledges and examines those factors prior to discounting the subjective complaints regarding the child's functional limitations. *See Lowe v. Apfel,* 226 F.3d 969, 971-72 (8th Cir. 2000).

The ALJ determined that Plaintiff suffers from narcolepsy, ADHD, depression, and headaches, all of which are considered "severe" under the Act. (Tr. 14). However, she ultimately determined that Plaintiff was not disabled because he did not have an impairment or combination of impairments that meets or medically equals a listed impairment. (Tr. 15). Furthermore, the ALJ concluded that Plaintiff's impairments did not functionally equal a listed impairment, as she found no limitations in interacting and relating with others, moving about and manipulating objects, and caring for yourself, and less than marked limitations in acquiring and using information, attending and completing tasks, and health and physical well-being. (Tr. 17-21).

Of particular concern is the ALJ's determination that Plaintiff has less than marked limitations in the domains of acquiring and using information, attending and completing tasks, and health and physical well-being.

In discounting Plaintiff's alleged symptoms, the ALJ stated:

> The medical evidence confirms that the claimant has been diagnosed with narcolepsy, attention deficit with hyperactivity disorder, and headaches, but the conditions have responded to treatment. The claimant has had to have some special accommodations at school, but is able to successfully complete his modified school program. He is not in trouble with juvenile authorities or at school. He completed a short period of psychological counseling, after which his guardian described that he was doing better and no longer needed to continue counseling. An updated report card indicates that he is passing all of his subjects. . . With the use of proper medications, and the modifications in the classroom setting, and allowance for napping, the claimant has been able to continue with a successful school career.

(Tr. 17).

The evidence shows that, contrary to the ALJ's opinion, Plaintiff has had limited success in treating and controlling his symptoms. Although Plaintiff experienced transitory periods of

-9-

improvement with medication, he consistently suffers from marked sleepiness, severe headaches, anger outbursts and attention deficits, which continue to interfere with his day-to-day functioning. (Tr. 420-21, 473).

Although Plaintiff takes medication (the maximum dosage) for his narcolepsy and is allowed timed naps at school, he continues to suffer from excessive daytime somnolence and misses an average of three to five school days per month. (Tr. 585-86). Plaintiff's treating physicians and teachers corroborate this testimony. On May 13, 2005, Dr. DeSilva wrote a letter to Plaintiff's school recommending that he be allowed two timed naps per day and a nap before all tests. (Tr. 426). Similarly, Dr. Potts opined that Plaintiff's medical problems render him unable to follow the school's attendance policy. (Tr. 146). An Annual Review Form dated September 29, 2006, indicated that Plaintiff was missing too many school days and having trouble keeping up with his homework. (Tr. 203). At this time, Plaintiff was functioning on a fifth to sixth grade level in reading, a third to fourth grade level in writing, and a sixth to seventh grade level in math. *Id.* For these reasons, Plaintiff was moved to all special education classes in eleventh grade. (Tr. 127, 567). We simply cannot agree that this is a "successful school career."

In addition to narcolepsy, Plaintiff suffers from ADHD and migraines. According to his teachers, Plaintiff has an obvious problem focusing long enough to finish assigned activities. (Tr. 64, 151, 169, 209). He often "zones out" and forgets things. (Tr. 586-87). Plaintiff's excessive sleepiness intensifies his difficulties with focus, attention and concentration. (Tr. 420-21). He was taking Adderall for his ADHD, but discontinued this medication because it caused significant anger problems. (Tr. 407).

Plaintiff began complaining of headaches in early 2004. (Tr. 252). A head CT and EEG were both normal. (Tr. 251-52, 282-83). Plaintiff was prescribed Topamax for migraines. (Tr. 475). However, even with treatment, Plaintiff still experiences migraines an average of three times per week. (Tr. 473-73, 581).

Behaviorally, although Plaintiff demonstrated some improvement in his ability to control his anger, his GAF scores consistently ranged from a 45-50 during therapy, indicating serious symptoms or a serious impairment in social, occupational, or school functioning. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, 34 (4th ed., 2000). Furthermore, although Plaintiff discontinued therapy at Ozark Guidance, he began counseling at Wellspring Healthcare Associates in May 2006 due to increasing anger/aggression problems. (Tr. 444-49). At this time, Plaintiff was taking Lexapro, but was later switched to Effexor after a violent episode at home. (Tr. 464-65).

We find the ALJ's reasoning inadequate and unsupported by the evidence of record. Although Plaintiff initially improved with the use of medication, his overall record reflects continuing difficulties in the areas of acquiring and using information, attending and completing tasks, and health and physical well-being. Therefore, we believe remand is necessary to allow the ALJ to further evaluate Plaintiff's SSI claim. *Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (the ALJ is not free to ignore medical evidence, but must consider the record as a whole).

We also note there are no RFC assessments completed by Plaintiff's treating physicians or counselors. Generally, the opinion of a consulting physician who examined the claimant once or not at all does not constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). On remand, the ALJ should obtain an RFC assessment from a treating physician so that an

informed decision can be made regarding Plaintiff's level of functioning in each domain.

### V.     Conclusion:

Accordingly, we conclude that the ALJ's decision is not supported by substantial evidence and should be reversed and remanded to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

DATED this 15th day of September 2010.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE